

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:06CR00037 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| MARIO ALONSO ESTRADA-AYALA, | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with conspiring with other persons, both known and unknown to the Grand Jury, to knowingly and intentionally distribute, and possess with the intent to distribute, 500 grams or more of a mixture or substance containing a detectable amount of cocaine hydrochloride (powder), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), all in violation of Title 21, United States Code, Section 846; in Count Two with knowingly and intentionally possessing with the intent to distribute a mixture or substance containing a detectable amount of cocaine hydrochloride (powder), a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1); in Count Three with knowingly and intentionally possessing with the intent to distribute marijuana, a Schedule I controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1); and in Count Four with knowingly and intentionally possessing a firearm in furtherance of a drug trafficking crime

which could be prosecuted in a United States Court, specifically, the possession of cocaine with intent to distribute, all in violation of Title 18, United States Code, Section 924(c).

On November 6, 2006, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Counts Two and Four of the Indictment. The government has agreed to dismiss the remaining counts of the Indictment upon acceptance of the defendant's plea to Counts Two and Four.

At this hearing the defendant was placed under oath and testified that his full legal name is Mario Alonso Estrada-Ayala, that he was born on November 11, 1973 in Mexico and that he received nine years of formal education in Mexico. The defendant stated that he can speak "very very little" English and is unable to read or write the English language.[1] The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offenses.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises, assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the

---

[1]An interpreter assisted the defendant during the hearing.

2

offenses with which he is charged in Counts Two and Four are felonies and that, if his plea is accepted, he will be adjudged guilty of those offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 per felony count and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely, as set forth in the plea agreement. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Counts Two and Four, including any facts related to sentencing. The defendant further testified that he knew that the government retained the right to appeal any sentence the court imposed that was below the applicable sentencing guideline range or below the government's recommended sentence. The defendant acknowledged that he consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant further acknowledged that he consented to the forfeiture of any property or asset acquired as a result of or in furtherance of his drug trafficking, and that the forfeiture is proportionate to the degree and nature of the offenses he committed and does not raise any of the concerns addressed in *United States v. Austin*, 113 S.Ct. 2801 (1993). The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was

3

waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged in Count One is forty years imprisonment, a $2,000,000 fine, and a period of supervised release. The defendant was informed that the statutory minimum sentence for Count One is five years imprisonment and a $100 special assessment.[2] The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged in Count Two is twenty years imprisonment and a $1,000,000 fine. The defendant was informed that the statutory minimum sentence for Count Two is a $100 special assessment. The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged in Count Three is five years imprisonment and a $1,000,000 fine. The defendant was informed that the statutory minimum sentence for Count Three is a $100 special assessment. The defendant was informed that the statutory mandatory penalty provided by law for the offense with which he is charged in Count Four is five years imprisonment, which must be set to run consecutive to any other sentence he receives. The defendant was informed that each conviction under Title 18 also has a maximum fine of $250,000 and a mandatory special assessment of $100. The defendant was informed that because he is not legally present in the United States and is the citizen of another country, it is likely he will be returned to his home country upon release from imprisonment. The defendant was further informed that if he is not deported, he will be subject to

---

[2]Defendant was informed that he could be sentenced to less than five years imprisonment if the government makes a motion under Title 18, United States Code, Section 3553(e) on his behalf, or if he qualifies for the "Safety-Valve" set forth in Title 18, Section 3553(f).

4

a minimum five year period of supervised release.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a) for acceptance of responsibility, and he should also be granted an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant was informed that the government will recommend that he

5

receive a sentence of incarceration between the low end and middle of the applicable sentencing guidelines range and that the government will object to any motion for downward departure that he might make. The defendant stated he understood that the government would make this recommendation without regard to whether the government makes or the court grants any motion for further reduction based upon his "substantial assistance." The defendant stated that he and the government would jointly move for the court to find that the "relevant conduct" weight of the cocaine was approximately 300 grams and that the court begin computation of his sentence with that figure. The defendant stated that he was aware that any information given during the proffer or during cooperation would not be used against him to enhance his sentence pursuant to USSG § 1B1.8.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right

to serve on a jury, and the right to possess a firearm.[3]

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea. The defendant asked the court to accept his plea of guilty to Counts Two and Four of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

If this case had gone to trial today, the evidence would have been that the Jefferson Area Drug Enforcement ("JADE") Task Force executed a search warrant at 731 Keyhole Drive, Charlottesville, Virginia, in the Western Judicial District of Virginia at approximately 3:30 AM. During this search, the agents and officers discovered a quantity of cocaine hydrochloride in a plastic bag floating in a commode, and also found other cocaine and marijuana hidden in various places around the trailer home. In particular, one drawer, which had been removed from a bureau, was found hidden in a closet; this drawer contained a handgun, another quantity of cocaine hydrochloride, and other items associated with the sale of cocaine. Other items seized included two sets of digital scales and approximately $800 in currency.

When interviewed by JADE officers, through a Spanish language interpreter after being advised of his Miranda rights in English and Spanish, Mr. Estrada Ayala acknowledged that he was in possession of the cocaine and the gun. He related that he was holding the larger quantity of cocaine

---

[3] Defendant would not possess these rights which appertain only to citizens.

recovered from the commode for a person who had returned to Mexico, intending to return it when he came back. Estrada Ayala admitted that he is an alien illegally in this country, and said he had been here for about seven years, about three and a half years in this trailer. He admitted that he had been selling cocaine for about eighteen months, earning an estimated $1,000 per week by doing so.

In particular, he admitted removing the bureau drawer containing the gun and some of the cocaine, upon hearing the officers outside, and hiding it in the closet because he feared that a robbery was in progress.

The cocaine was submitted to the state forensic laboratory for examination and was found to be cocaine hydrochloride weighing 301 grams. The firearm was tested and was found to be in working condition and matched the ammunition found in and with it.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Counts Two and Four of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts Two and Four and adjudge him guilty of those offenses. The undersigned further DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for January 26, 2007 at 10:30 a.m. in Charlottesville before District Judge Norman K. Moon.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: /s/
United States Magistrate Judge

11-09-06
Date